1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAIRE POOLE,

          Plaintiff,

   v.

MERRICK B. GARLAND,

          Defendant.

Case No.  20-cv-09379-PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Re: Dkt. No. 39

14     Defendant's motion to dismiss plaintiff's third amended complaint came on for

15 hearing before this court on March 10, 2022.  Plaintiff appeared through her counsel,

16 Michael L. Hawbecker.  Defendant appeared through his counsel, Kenneth W. Brakebill.

17 Having read the papers filed by the parties and carefully considered their arguments and

18 the relevant legal authority, and good cause appearing, the court hereby rules as follows.

19 **I.     BACKGROUND**

20     The plaintiff in this employment discrimination case is Dr. Kaire Poole, a clinical

21 psychologist formerly employed by the Bureau of Prisons.  Attorney General Merrick B.

22 Garland is the defendant in this case, sued here in his official capacity as the head of the

23 Department of Justice and Bureau of Prisons.

24     **A.     Plaintiff's employment at the Bureau of Prisons**

25     Plaintiff began working for the Bureau of Prisons ("BOP") in October 2009.  Third

26 Amended Complaint ("TAC") ¶ 18.  In December 2012, she was promoted to the position

27 of a GS-13 Drug Abuse Program Coordinator at BOP's Federal Correctional Institution

28 ("FCI") in Dublin, California.  TAC ¶¶ 16, 19.  In this role, she "supervised Drug Treatment

Specialists" and "oversaw the residential and non-residential, Drug Abuse Program that served approximately 325 federal inmates, all of whom were also counseled by other FCI-Dublin Clinical Psychologists."  TAC ¶ 26.

The Psychology Staff at FCI-Dublin included (1) three staff psychologists (Dr. Cynthia Townsend, Dr. Andrew Corso, and Dr. Crissy Bankston), all of whom were at the GS-12 level (a level below plaintiff); (2) another GS-13 Drug Abuse Program Coordinator (Dr. Kyung Lee); and (3) a GS-12 Resolve/Special Programs Coordinator (Dr. Iris Weber).  TAC ¶ 22.  The psychology staff, including plaintiff, was supervised by Dr. David Crago, the Chief Psychologist at FCI-Dublin, until late 2015.  TAC ¶ 23.  Upon his departure, plaintiff's supervisor became the Associate Warden/Chief Psychologist (Dr. Donna Davis), and her second-level supervisor was the FCI-Dublin Warden (Charleston Iwuagwu).  TAC ¶ 23.  Plaintiff was the only psychologist of African American descent on the FCI-Dublin Psychology Staff.  TAC ¶ 21.

**B.    Plaintiff's work conditions after December 2012 and plaintiff's complaint in 2013**

Plaintiff alleges that "[s]oon after taking the position" at FCI-Dublin in December 2012, her work environment changed.  TAC ¶ 27.  Psychology Department staff, particularly Dr. Cynthia Townsend, engaged in a pattern of discriminatory animus, harassment, and hostility toward plaintiff.  TAC ¶ 28.  Plaintiff complained to her supervisors and thereafter made an EEO complaint regarding this conduct in early 2013.  TAC ¶ 28.  "Dr. Poole's 2013 complaint against Dr. Townsend was informally mediated by EEO Counselor Shawn Sawyer into early 2014, resulting in an agreement by Dr. Townsend to 'cease all harassment, discrimination and hostil[e] actions' toward Dr. Poole."  TAC ¶ 29.  Dr. Townsend's conduct continued despite this agreement, however, and plaintiff again sought EEO counseling in 2016.  TAC ¶¶ 29-30.

**C.    Alleged categories of discriminatory conduct**

Plaintiff alleges, "[t]he discriminatory animus directed at Plaintiff at the heart of this action includes, but is not limited to, specific instances of racially motivated words and

United States District Court
Northern District of California

1   conduct directed at Plaintiff, disparate treatment of Plaintiff, and the resulting casual and

2   routine use and dissemination by co-workers and management, between June, 2015,

3   and June 26, 2016, of stereotypes and assumptions about Plaintiff's abilities,

4   qualifications, character and job performance, all arising from and based on Plaintiff's

5   race, color and/or prior EEO activity; which management adopted and allowed to pervade

6   the working environment." TAC ¶ 34.

7       Plaintiff alleges the following categories of conduct demonstrating discriminatory

8   racial animus against her:

9   • (1) *Skin color allegations*: Plaintiff alleges that members of the Psychology

10      Department staff made derogatory comments about Warden Iwuagwu's skin color and

11      that Dr. Townsend made racial innuendo toward plaintiff in light of these comments.

12      TAC ¶¶ 37-40.

13  • (2) *Drug program sponsored events*: Plaintiff announced two events for drug program

14      inmates (a women's empowerment event and a Black history event) and Dr.

15      Townsend did not permit inmates to attend, while this did not happen for a St.

16      Patrick's Day event or other events announced by other Staff Psychologists. TAC

17      ¶¶ 41-45.

18  • (3) *Racial comments made to Angel Charles*: Dr. Townsend made racial overtones to

19      a Black woman, Angel Charles, who was brought into the unit as a Drug Treatment

20      Specialist, by asking her to clean the office she previously occupied and Dr.

21      Townsend would be moving into. Charles was held to a different standard than white

22      subordinates were held. TAC ¶¶ 46-48.

23  • (4) *Demeaning comments made to Tyrone Miller*: Dr. Townsend used "demeaning

24      and racially-charged" phrases like "good boy", "that's my boy" and "that's a good boy"

25      when speaking to a black male Drug Treatment Specialist named Tyrone Miller,

26      whom plaintiff supervised. TAC ¶¶ 49-52.

27  • (5) *Comments made to inmates hired for assistance*: Dr. Townsend made "racially-

28      charged, hostile and discriminatory comments" to plaintiff and Black inmates hired to

assist staff.  TAC ¶¶ 53-56.  Dr. Townsend's comments included allegations that plaintiff showed Black inmates undue favoritism and had an inappropriate relationship with an inmate.  TAC ¶ 54.

- (6) *False reports that plaintiff favored Black inmates*: Dr. Townsend falsely reported mistreatment by plaintiff of white inmates over black inmates. TAC ¶¶ 57-60.

- (7) *Interference by Dr. Townsend with plaintiff's transfer pre-authorizations*: Dr. Townsend made requirements of plaintiff that she did not require of other colleagues in adjusting inmate care levels for transfer pre-authorizations.  TAC ¶ 61.

- (8) *June 23, 2016, break-in of office safe*: Dr. Townsend improperly questioned plaintiff's license status and abilities and qualifications to diminish her qualifications for the Chief Psychologist position, which culminated in a break-in of a unit safe by staff on June 23, 2016, to take confidential personnel files, including plaintiff's.  TAC ¶¶ 62-65.

- (9) *Late arrival to work*: Dr. Townsend reported to management that plaintiff was late for work on "one instance" and she was warned that she would be disciplined, but late arrival was ignored for others.  TAC ¶ 68.

Plaintiff alleges that management allowed the discriminatory conduct "to pervade the working environment."  TAC ¶ 34.  She contends that: "These examples demonstrate that, with the consent and knowledge of management – Warden Iwuagwu, A[ssociate] W[arden Dr. Donna] Davis and [Chief Psychologist] Dr. Crago – Dr. Cynthia Townsend engaged in an ongoing pattern of discriminating, racially hostile statements and actions directed at plaintiff based on her race, color and plaintiff's prior EEO activity. Management's failure to address these activities and engage in similar conduct operated to perpetuate and condone it and further discriminate against the rights of Plaintiff."  TAC ¶ 67.  Plaintiff also claims that despite her reports over time to her three supervisors (Dr. Crago, AW Davis, and Warden Iwuagwu) and to "the Investigations Department and to BOP-FCI Dublin Human Resources," the conduct was "condoned, ignored, encouraged, perpetuated, adopted or otherwise allowed by management to continue without

4

1   substantive response or remedy."  TAC ¶ 69.

2          Plaintiff resigned from her position at the FCI-Dublin facility.  TAC ¶ 8.

3          **D.      Alleged adverse employment actions**

4          Plaintiff alleges the following adverse actions in the TAC under the header

5   "adverse employment actions/disparate treatment of plaintiff":

6   • (1) "Plaintiff's Performance and Authority Were Undermined" (*Preferential treatment of*

7        *white inmates*): Dr. Townsend regularly made comments about white inmates

8        receiving preferential treatment from staff and the Warden, resulting in reversal of

9        plaintiff's decision-making.  TAC ¶¶ 70-80.

10  • (2) "Plaintiff's Record Did Not Reflect and No Payment Was Received for

11       Compensatory Time Worked By Plaintiff" (*Approval of compensating time non-black*

12       *staff but not for plaintiff*): Plaintiff alleges that compensatory time was approved for

13       non-black staff psychologists, but on three occasions in late 2015 and early 2016,

14       plaintiff's overtime authorization requests were not granted by her supervisor.  TAC

15       ¶¶ 81-88.

16  • (3) "Management Eliminated Job Duties Necessary for Plaintiff to Perform Her Job"

17       (*Interference with job as Acting Chief Psychologist*): On one occasion when plaintiff

18       was acting as the Acting Chief Psychologist, Dr. Bankston refused a request by

19       plaintiff to attend to a suicidal inmate.  TAC ¶¶ 89-90.  Rather than reprimanding Dr.

20       Bankston for insubordination, AW Davis eliminated plaintiff's authority over other

21       Clinical Psychologists during her rotation as Acting Chief.  TAC ¶¶ 91-92.

22  • (4) "Plaintiff Was Assigned an Inequitable Workload" (*Plaintiff given greater workload*

23       *than others*): Additional inmates were assigned to plaintiff's workload following a

24       supervisor's departure, increasing her caseload by some 30 percent to a total of 95

25       inmates.  TAC ¶¶ 93-95.  This distribution of labor was inequitable where plaintiff's

26       workload was substantially greater than the 45- to 65-inmate caseload of other, non-

27       Black psychologists.  TAC ¶ 95.

28  • (5) "Plaintiff Was Subjected to Disparate Procedural Standards" (*Incorrect paycheck*

1    *amount*): On one occasion, plaintiff received a check "that was for less than what was

2    due for the pay period," while plaintiff is unaware of paycheck issues of any kind for

3    any of the other staff psychologists.  TAC ¶¶ 96-99.

4    • (6) "Plaintiff Was Not Permitted to Attend Continuing Education Training/Courses"

5    (*Plaintiff not permitted to attend BOP or third-party training*): On some five occasions,

6    supervisors did not permit plaintiff to attend training sessions by BOP or third-party

7    vendors for which they allowed non-Black Staff Psychologists to attend, interfering

8    with plaintiff's professional advancement.  TAC ¶¶ 100-105.

9    • (7) "Plaintiff was Disciplined by Management Based on Reporting that Management

10   Knew to be False" (*False reporting*):[1] Dr. Townsend falsely reported to Donna Davis

11   "that Plaintiff made errors in transfer paperwork, refused to see inmates, allowed staff

12   to work inappropriate schedules, gave unfair permission and made exceptions for

13   staff members to leave early on Fridays, allowed staff to work compressed work

14   schedules without HR approval, failed to monitor caseload, failed to monitor sick and

15   annual leave of staff, failed to properly process inmate transfers." TAC ¶¶ 106-09.

16       **E.    Plaintiff's EEO complaint in 2016 and the subsequent EEO proceeding**

17       On or about October 21, 2016, plaintiff filed a formal "Complaint of Discrimination"

18   with the Equal Employment Opportunity Commission ("EEOC").  TAC ¶ 118; see also

19   Dkt. 20-1 (Plaintiff's EEO Complaint).   Plaintiff attached three pages of allegations to the

20   administrative complaint form prefaced with the following language:

21           After my promotion to Grade 13 Drug Abuse Program
             Coordinator in December 2012, Dr. Townsend began
22           antagonizing me. Immediately after my promotion, Dr.
             Townsend demonstrated a pattern of racial bias, harassment
23           and discrimination. Dr. Townsend is not my supervisor; she is
             a Grade 12 Staff Psychologist.
24
     Dkt. 20-1 at 2.  Plaintiff then proceeded to list 34 specific allegations of discriminatory
25
     behavior.  Dkt. 20-1 at 2-4.  She assigned each allegation a number, beginning at 1 and
26
     ending with 34.  Dkt. 20-1 at 2.
27

28   _____
     [1] Plaintiff agrees to withdraw this allegation from the TAC.

United States District Court
Northern District of California

1    On October 17, 2019, following an EEO investigation, an Administrative Judge of

2    the EEOC granted summary judgment in favor of the BOP, and the agency issued a final

3    order implementing the Administrative Judge's decision.  Dkt. 36-1 at 3.  Plaintiff filed an

4    administrative appeal of the agency's order in February 2020.  TAC ¶ 110.  On

5    September 30, 2020, the EEOC's Office of Federal Operations affirmed the agency's final

6    decision, concluding that "[b]eyond her bare assertions, Complainant has simply provided

7    no evidence to support her claim that her treatment was the result of her race or prior

8    EEO activity" and that "the preponderance of evidence does not establish that the

9    supervisors involved were motivated by discriminatory or retaliatory animus."  Dkt. 36-1 at

10    6.

11    **F.    Procedural history**

12    Plaintiff filed the original complaint in this court on December 29, 2020.  Dkt. 1.

13    The original complaint asserted three causes of action: (1) hostile work environment

14    based on race in violation of 42 U.S.C. § 1981, (2) race discrimination – disparate

15    treatment in violation of 42 U.S.C. § 1981, and (3) retaliation in violation of 42 U.S.C.

16    § 1981.  Dkt. 1 at 8-11.  Multiple rounds of motions to dismiss and amended pleadings

17    have ensued.

18    Plaintiff filed the now-operative Third Amended Complaint ("TAC") on November

19    11, 2021, alleging the following causes of action: (1) race-based discrimination (hostile

20    work environment) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

21    U.S.C. § 2000e-2(a), and (2) race-based discrimination (disparate treatment) in violation

22    of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a).[2]  Dkt. 36.

23    The Attorney General now moves to dismiss and/or strike from the TAC: "(1) Plaintiff's

24    cause of action for race discrimination based on disparate treatment; (2) Plaintiff's cause

25    of action for race discrimination based on hostile work environment; and (3) all

26    allegations that were not administratively exhausted."  Dkt. 39 at 8.  This marks an

27

28    _____
[2] Plaintiff's claim for retaliation was dismissed with prejudice.  Dkt. 35.

7

1  expanded approach to dismiss the entire lawsuit—the hostile environment claim was left

2  unchallenged in the Attorney General's prior motions to dismiss.

3  **II.     DISCUSSION**

4        **A.     Legal Standard**

5        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

6  legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,

7  1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

8  a complaint include a "short and plain statement of the claim showing that the pleader is

9  entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

10  12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

11  facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

12  Cir. 2013).

13        While the court is to accept as true all the factual allegations in the complaint,

14  legally conclusory statements, not supported by actual factual allegations, need not be

15  accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The complaint must proffer

16  sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

17  Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

18        "A claim has facial plausibility when the plaintiff pleads factual content that allows

19  the court to draw the reasonable inference that the defendant is liable for the misconduct

20  alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not

21  permit the court to infer more than the mere possibility of misconduct, the complaint has

22  alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  Id. at 679.  Where

23  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

24  cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

25  2005).

26        **B.     Administrative Exhaustion**

27        To bring a Title VII claim in district court, a plaintiff must first exhaust her

28  administrative remedies.  42 U.S.C. § 2000e-16(c); Sommatino v. United States, 255

United States District Court
Northern District of California

1    F.3d 704, 707 (9th Cir. 2001).  Under the statutory and regulatory scheme, a federal

2    employee must notify an EEO counselor of discriminatory conduct within 45 days of the

3    alleged conduct.  Sommatino, 255 F.3d at 708 (citing 29 C.F.R. §§ 1614.105, 1614.106).

4    This administrative filing requirement is a mandatory processing rule for Title VII claims,

5    "not a jurisdictional prescription delineating the adjudicatory authority of courts."  Fort

6    Bend Cty., Texas v. Davis, 139 S.Ct. 1843, 1851 (2019).[3]

7         "Allegations of discrimination not included in the plaintiff's administrative charge

8    may not be considered by a federal court unless the new claims are like or reasonably

9    related to the allegations contained in the EEOC charge."  B.K.B. v. Maui Police Dep't,

10   276 F.3d 1091, 1100 (9th Cir. 2002) (cleaned up).  Courts consider allegations "like or

11   reasonably related to the allegations" in an administrative complaint submitted to the

12   EEOC if they would fall within "the scope of an EEOC investigation which [could]

13   reasonably be expected to grow out of the [administrative] charge of discrimination."

14   Cloud v. Brennan, 436 F.Supp.3d 1290, 1302 (N.D. Cal. 2020) (quoting Sosa v. Hiraoka,

15   920 F.2d 1451, 1456 (9th Cir. 1990)); see also Vasquez v. County of Los Angeles, 349

16   F.3d 634, 644 (9th Cir. 2003) (a court may consider "all claims of discrimination that fall

17   within the scope of the EEOC's actual investigation or an EEOC investigation that could

18   reasonably be expected to grow out of the charge").

19        Courts evaluating the similarity between an administrative complaint and a Title VII

20   claim "may consider 'such factors as the alleged basis of the discrimination, dates of

21   discriminatory acts specified within the charge, perpetrators of discrimination named in

22   the charge, and any locations at which discrimination is alleged to have occurred.'"

23   Vasquez, 349 F.3d at 644 (quoting B.K.B., 276 F.3d at 1100).  "In addition, the court

24   should consider plaintiff's civil claims to be reasonably related to allegations in the charge

25   to the extent that those claims are consistent with the plaintiff's original theory of the

26

27   ───────────────────────
28   [3] Though defendant's motion to dismiss alternatively relies on a theory of lack of subject
     matter jurisdiction, the court considers the question of administrative exhaustion under
     the 12(b)(6) standard in light of this precedent.

United States District Court
Northern District of California

1    case." B.K.B., 276 F.3d at 1100.  The court must construe plaintiff's EEOC charges "with

2    utmost liberality since they are made by those unschooled in the technicalities of formal

3    pleading." Lyons v. England, 307 F.3d 1092, 1104 (9th Cir. 2002) (internal citation

4    omitted).  "Procedural technicalities should not be employed to impede a Title VII

5    claimant from obtaining a judicial hearing on the merits." Ramirez v. Nat'l Distillers &

6    Chem. Corp., 586 F.2d 1315, 1321 (9th Cir. 1978) (citation omitted).

7         Here, defendant argues that several allegations and categories of allegations were

8    not enumerated in Dr. Poole's underlying EEO complaint.  As summarized in the EEO

9    decision, plaintiff claims

> she was subjected to continuous harassment when a non-
> supervisory co-worker [Townsend] made offensive racial
> remarks to her on several occasions, made derogatory
> statements about the supervision of her staff members to
> management, made demeaning statements about "women of
> color" events, purposely scheduled things to impede on events,
> spread rumors that she favored black subordinates and
> inmates, broke into a safe to retrieve her personal file,
> subjected her to harassing phone calls, interrogated her about
> her license credentials, and falsely accused her of not doing
> her job, and not monitoring her staff and her caseload.

16   Dkt. 36-1 at 2-3.  Many of the allegations of the TAC mirror and expand on the allegations

17   in her EEO complaint.  Specifically, the nine categories of conduct (numbers 1 through 9

18   noted above) repeat many of the 34 allegations of misconduct that plaintiff originally

19   enumerated in her administrative complaint, all of which refer to conduct engaged in

20   solely by Dr. Townsend.  Because the allegations derive from the same perpetrator at the

21   same site, they are like or reasonably related to the allegations in the EEO complaint and

22   are thus administratively exhausted.

23        On the other hand, none of the adverse actions described by plaintiff (numbers 1

24   through 6 noted above) are specifically tethered to the activities described in the

25   administrative complaint, especially where they appear out of the control of Dr. Townsend

26   and/or allege wrongdoing by supervisors like Assistant Warden Davis and Warden

27   Iwuagwu.  These items, mostly related to pay and training, are not reasonably related to

28   the allegations in the administrative complaint.  Plaintiff fails to identify how these

United States District Court
Northern District of California

allegations could reasonably be expected to grow out of the administrative complaint and related investigation into Dr. Townsend's conduct.  Thus, the adverse actions have not been administratively exhausted.

### C.    Disparate Treatment

"Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'"  Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting Ricci v. DeStefano, 557 U.S. 557, 577 (2009)). To state a prima facie claim of disparate treatment, a plaintiff must show that "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

Here, defendant does not challenge the first two elements of the prima facie claim, and instead argues the latter two elements are deficiently pleaded.  The court does not reach the merits of these challenges.  The parties' repeated pleading and argument make clear that the third element of the prima facie claim for disparate treatment rests entirely on the allegations in the TAC appearing under the header "adverse employment actions/disparate treatment of plaintiff."  TAC ¶¶ 70-109.  As discussed above, none of these allegations have been administratively exhausted, and they cannot support a Title VII claim.  Therefore, defendant's motion to dismiss plaintiff's disparate treatment claim is GRANTED.

### D.    Hostile Work Environment

To state a claim for hostile work environment on the basis of race under Title VII, a plaintiff must allege that (1) she was subjected to unwelcome verbal or physical conduct because of her race and (2) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003).

To determine whether conduct was sufficiently severe or pervasive to violate Title

1   VII, courts look to the totality of the circumstances.  Harris v. Forklift Sys., Inc., 510 U.S.

2   17, 23 (1993).  Occasional or isolated incidents are not actionable; rather, a plaintiff must

3   show a concerted pattern of harassment of a repeated, routine, or generalized nature.

4   Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); McGinest v. GTE Serv. Corp.,

5   360 F.3d 1103, 1113 (9th Cir. 2004).  "The working environment must both subjectively

6   and objectively be perceived as abusive."  Vasquez v. Cty. of Los Angeles, 349 F.3d 634,

7   642 (9th Cir. 2003) (quoting Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir.

8   2000)).

9       Subjectively, the evidence must show that the harassment is sufficiently severe or

10   pervasive to alter the conditions of the victim's employment and create an abusive

11   working environment.  McGinest, 360 F.3d at 1113.  The Supreme Court has followed a

12   "middle path" with regard to the level of hostility or abuse necessary to establish a hostile

13   work environment.  McGinest, 360 F.3d at 1113 (citing Harris, 510 U.S. at 21).  "It is

14   enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for

15   her to do her job, to take pride in her work, and to desire to take on in her position.'"

16   McGinest, 360 F.3d at 1113 (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459,

17   1463 (9th Cir. 1994)).

18       Objectively, courts look at "all the circumstances," including "the frequency of the

19   discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

20   mere offensive utterance; and whether it reasonably interferes with an employee's work

21   performance."  Harris, 510 U.S. at 23; McGinest, 360 F.3d at 1113.  The analysis is made

22   from the perspective of a reasonable person "with the same characteristics as" the

23   plaintiff.  Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007).  The

24   required level of severity varies inversely with the pervasiveness or frequency of the

25   conduct.  See Harris, 510 U.S. at 23.

26       Defendant argues that the conduct alleged in the TAC is not sufficiently severe or

27   pervasive to alter the conditions of plaintiff's employment and create an abusive working

28   environment.  Manatt, the Ninth Circuit case on which defendant primarily relies, is

United States District Court
Northern District of California

12

1   distinguishable.  There, the Ninth Circuit concluded that "two regrettable incidents

2   occurring over a span of two-and-a-half years, coupled with the other offhand remarks

3   made by [the plaintiff's] co-workers and supervisor, did not alter the conditions of [her]

4   employment."  Manatt, 339 F.3d at 799.

5        Here, in contrast, plaintiff alleges a more pervasive pattern of harassment,

6   particularly at the hands of Dr. Townsend.  Plaintiff's complaint includes nine categories

7   of discriminatory conduct occurring in the 12-month period between June 2015 and June

8   2016, a period of conduct much more focused than the one at issue in Manatt.  TAC ¶¶

9   34, 37-69.  As discussed above, even though not all of the nine categories are

10  specifically mentioned in the EEO complaint, they have been administratively exhausted

11  where all the allegations in the EEO complaint mention Dr. Townsend and it is

12  reasonable to conclude that all allegations pertaining to her treatment of plaintiff would

13  have been included in an investigation.  The alleged maltreatment described at both the

14  administrative stage and in the TAC includes conduct that interfered with Dr. Poole's

15  work performance.  This includes, for example, allegations that plaintiff showed Black

16  inmates undue favoritism and had an inappropriate relationship with an inmate.  TAC

17  ¶ 54.  Plaintiff complains of offensive comments from Dr. Townsend like "Dr. Poole likes

18  the Warden," and "Dr. Poole has something in common with the new Warden," while

19  touching the skin on her arm indicating skin color (TAC ¶ 38), incidents that, taken in the

20  context of ongoing antagonism from Dr. Townsend, suggest a pattern of harassing

21  conduct based on plaintiff's race.  Allegations of incidents that alone might be relatively

22  minor but—when taken together—assert a broader pattern can be sufficient to support a

23  hostile work environment claim.  See, e.g., Landucci v. State Farm Ins. Co., 65 F. Supp.

24  3d 694, 704-05 (N.D. Cal. 2014) (declining to dismiss a hostile work environment claim

25  where the plaintiff alleged that her supervisor commented on her choice of clothing

26  several times while not commenting on the clothing of male employees and treated her

27  differently than her male-coworkers by consistently micromanaging and criticizing her

28  work, among other conduct).  Under the totality of the circumstances, it is plausible that a

United States District Court
Northern District of California

13

1    reasonable person of plaintiff's racial background would perceive this as an intolerable

2    working environment.

3           To the extent that defendant challenges the severity or pervasiveness of the

4    alleged harassment, this argument is "best evaluated in light of an evidentiary record."

5    See, e.g., Brown v. Contra Costa Cty., No. C 12-1923 PJH, 2014 WL 1347680, at *7

6    (N.D. Cal Apr. 3, 2014) (denying a motion to dismiss).  For the purpose of Rule 12(b)(6),

7    plaintiff's allegations sufficiently plead a hostile work environment that "mak[es] it more

8    difficult for her to do her job, to take pride in her work, and to desire to stay on in her

9    position." McGinest, 360 F.3d at 1113.  Accordingly, defendant's motion to dismiss

10   plaintiff's hostile work environment claim is denied.

## III.    CONCLUSION

12          For the foregoing reasons, the court GRANTS in part and DENIES in part

13   defendant's motion to dismiss.  The motion is granted as to plaintiff's second cause of

14   action for violation of Title VII based on disparate treatment, and that cause of action is

15   DISMISSED WITH PREJUDICE given that plaintiff has had multiple opportunities to

16   amend this claim.  The motion is DENIED as to plaintiff's first cause of action for violation

17   of Title VII based on hostile work environment.  Defendant shall file an answer to the

18   remaining cause of action for hostile environment within 21 days from the date of this

19   order.

20          **IT IS SO ORDERED.**

21   Dated: March 17, 2022

22                                              */s/ Phyllis J. Hamilton*

23                                              PHYLLIS J. HAMILTON
                                                United States District Judge

24

25

26

27

28